HEARD NOVEMBER TERM, 1876.

## STATE, *ex rel.* BARKER, *vs.* BOWEN.

An action in the nature of *quo warranto* to determine the title to the office of electors of President and Vice President of the United States, brought in a State Court, is not removable to the Circuit Court of the United States under the Act of Congress of March 3d, 1875, upon the ground that the "matters in dispute therein arise under the Constitution and laws of the United States."

An action was brought in the Supreme Court of the State entitled "The State, *ex relatione* Theodore G. Barker, Samuel McGowan, J. I. Ingram, Robert Aldrich, John W. Harrington, William Wallace and John B. Erwin, *vs.* C. C. Bowen, Timothy Hurley, John Winsmith, Thomas B. Johnston, William B. Nash, Wilson Cooke and William F. Myers," in which the complaint or suggestion is as follows:

"Be it remembered that Theodore G. Barker, Samuel McGowan, J. I. Ingram, Robert Aldrich, John W. Harrington, William Wallace and John B. Erwin come here the 2d December, A. D. 1876, before the honorable the Supreme Court of the State of South Carolina, and, by leave of said Court first had and obtained, according to the form of the statute in that case made and provided, give the Court here to understand and be informed that on the 7th November, 1876, a general election was duly held in the said State for electors for President and Vice President of the United States; that at said election the above named relators, Theodore G. Barker, Samuel McGowan, J. I. Ingram, Robert Aldrich, John W. Harrington, William Wallace and John B. Erwin, were duly and legally elected by general ticket, (they being as many in number as the said State is entitled to appoint,) and had the highest number of votes at said election.

"That at said election the votes for the opposing candidates for said offices, respectively, were thereupon duly counted by the several Boards of Managers of the said election, and by them duly returned in their respective Counties to the Boards of Canvassers for their several Counties, and, the several Boards of County Canvassers having made their statements of the votes cast, the same, together with all the papers appertaining to said election, were by the Boards of County Canvassers duly transmitted to the Board of State Canvassers of the said State.

"That the said Board of State Canvassers met at the office of the Secretary of State on or before the 10th day of November next after such election and proceeded to canvass the votes given for the electors of President and Vice President, and made a false and fraudulent statement of all the votes, as appears by a comparison of the statements of the County Canvassers with the statements and returns of the precinct Managers in the several Counties, and falsely determined and certified as the persons elected as Electors of the State of South Carolina, of President and Vice President, the following named persons: Christopher C. Bowen, John Winsmith, Timothy Hurley, Thomas B. Johnston, William B. Nash, Wilson Cooke and William F. Myers.

"And, thereupon, the Secretary of State caused a copy, under the seal of his office, of the certified determination of the Board of State Canvassers to be delivered to each of the persons therein declared to be elected.

"And the said Christopher C. Bowen, John Winsmith, Timothy Hurley, Thomas B. Johnston, William B. Nash, Wilson Cooke and William F. Myers, not being duly and lawfully elected, and not having received the highest number of votes cast at such election, received said certified determination so delivered, and under and by virtue thereof, as evidence of title to the said offices and functions of State electors of President and Vice President of the United States, claim the right as such to meet and assemble at the capital on the first Wednesday in December next, being the next after their election, and then and there threaten and claim to vote by ballot for President and Vice President.

"And the said relators further give the Court to understand and be informed that if a true and correct statement of all the votes cast at said election had been made by the Board of State Canvassers, by comparing the statements of the County Canvassers with the statements and returns of the precinct Managers in the several Counties, and if the said Board had justly and truly determined and certified the persons so elected as electors, your relators above named would have been found to be elected, and to have received the highest number of votes cast for electors at said election, and would have been so determined and certified, and would have been entitled to receive a copy of the said certified determination, under the seal of his office, from the Secretary of State, and would have been entitled to assemble, according to law,

at the State capital, on Wednesday next, and then and there to cast the votes of the State of South Carolina for President and Vice President of the United States of America.

" Whereupon the said relators pray the consideration of the Court here in the premises, and that due process of law may be awarded against the said Christopher C. Bowen, John Winsmith, Timothy Hurley, Thomas B. Johnston, William B. Nash, Wilson Cooke and William F. Myers, in this behalf, and to make them answer to the State, and show by what warrant or authority they claim to have, use and enjoy the offices, liberties, privileges and franchises aforesaid."

And this was a petition by the defendants to the Supreme Court asking that said action be transferred to the United States Circuit Court for the District of South Carolina.

The grounds upon which the application to transfer were founded are stated in the opinion of the Court.

*Corbin, Denny, Settle,* for petitioners.

*Conner, Gordon,* contra.

December 26, 1876. The opinion of the Court was delivered by

WILLARD, A. J. The defendant, C. C. Bowen, and his associates, ask by petition a transfer of this case to the United States Circuit Court for the District of South Carolina. They allege that this is a civil action, involving the title and emoluments of the office of electors of South Carolina for President and Vice President of the United States, and that the pay and emoluments attached to such office by the laws of the State of South Carolina exceed in value $400, and, further, " that said matters in dispute therein arise under the Constitution and laws of the United States."

The authority claimed for removing the cause is that of the Act of Congress of March 3d, 1875.—Stat. 1874 and 1875, 472. Its requirement is " that any suit of a civil nature, at law or in equity, now pending or hereafter brought in any State Court when the matter in dispute exceeds, exclusive of costs, the sum or value of $400, and arising under the Constitution and laws of the United States," may be removed into the Circuit Court of the United States for the proper District by any party actually interested either as plaintiff or defendant.

We will consider whether this is a case arising under the Constitution and laws of the United States.

This is an action in the nature of a writ of *quo warranto*, brought originally in this Court under the authority of Section 4, Article IV, of the Constitution of this State, which is as follows: "The Supreme Court shall have appellate jurisdiction only in cases of chancery, and shall constitute a Court for the correction of errors at law, under such regulations as the General Assembly may by law prescribe: *Provided,* The said Court shall always have power to issue writs of injunction, *mandamus, quo warranto, habeas corpus,* and such other original and remedial writs as may be necessary to give it a general supervisory control over all other Courts in this State."

Under Section 9, Article V, of the Constitution, providing for a revision and codification of the laws and forms of procedure, it was enacted that "the writ of *quo warranto* and proceedings by information in the nature of *quo warranto*" be abolished, "and the remedies heretofore obtainable in these forms may be obtained by civil actions under the provisions of this Chapter."—Code of Procedure, Section 443. It was held by this Court, in *Alexander vs. McKenzie,* (2 S. C., 81,) that the effect of this Act of the Legislature, read with the Constitution, was to do away with the formal characteristics of the writ of *quo warranto,* but that the substantial jurisdiction covered by that writ remained vested in this Court under the protection of the Constitution and could be exercised under the form of a civil action originally brought here.

The case in hand is of the character just described, namely, an action in the nature of *quo warranto,* in which the plaintiffs seek a judgment of ouster against the defendants for unlawfully intruding upon and holding the office of electors of President and Vice President of the United States.

The matter in dispute relates to the title by which the respective parties claim the offices in question. Is it a case arising under the Constitution and laws of the United States?

It is proper to observe that, for the purpose of the present question, it must be assumed that the Court has jurisdiction to pronounce such a judgment as the principal case calls for, that is, a judgment of ouster. That question of jurisdiction is before us in a plea to the jurisdiction interposed by the defendants, but we have no occasion to anticipate a decision on that question of jurisdiction

in order to dispose of the question of transfer to the United States Circuit Court. The theory of the present application is that the Circuit Court has concurrent jurisdiction with this Court to determine all questions that can properly arise in the progress of the cause. To destroy the jurisdiction of this Court at the present stage of the proceedings is to destroy the jurisdiction of the United States Circuit Court, which must receive the same interpretation as that of this Court, and thus to defeat the object intended by the petition for transfer.

It must be conceded at once that, in order to determine the questions raised by the defendants' plea to the Court, it will be necessary for us hereafter, should we conclude that it is our duty to proceed with the case notwithstanding the petition to transfer, to look into the Constitution of the United States, to see by what authority the State of South Carolina acts in the matter of choosing the Presidential electors, and in order to determine whether the authority to act in the matter is of a special and limited character, such as might only authorize a particular legislative or executive act, in relation to which the public officers performing such act should be regarded rather as the immediate agents of the United States Constitution and laws than as agents of the State government, or whether she possesses general authority to proceed in the performance of her duties under the Constitution of the United States, as a State, clothed with local sovereignty, and thus be authorized to exert all her functions,—legislative, executive and judicial,—in order to consummate the act of duty and authority cast upon her. It may be assumed that such an inquiry will be necessary in order to reach a conclusion as to the competency of the State judiciary to deal with the question at all. Would such a reference to the Constitution and laws of the United States be sufficient to constitute the case as one arising under the Constitution and laws of the United States? If this question is answered in the affirmative, then it is difficult to see what would become of the boundary line between the State and national jurisdictions. It would be only necessary for a party to a suit in the State Courts, in order to practically defeat their jurisdiction through a transfer to the United States Circuit Court, to raise an objection to jurisdiction, with or without foundation, based on some reading of the Constitution or laws of the United States; for the moment the State Judges undertook to open the Constitution or laws of the United States to see

whether there was any force in such objection, they would be told that the fact of the necessity for such an objection established the case as one arising under the Constitution and laws of the United States, and that it must go to the United States Circuit Court under the statute.

It is clear that such a construction has not been put upon the Constitution and laws conferring jurisdiction on the Courts of the United States, and that it has no foundation on which to rest. We know of no case resting on the authority of the Supreme Court of the United States holding any such doctrine as that it is enough to confer upon a case depending in a State Court the character of one arising under the Constitution and laws of the United States that a plea to the jurisdiction of the Court has been or may be interposed involving a construction of the Constitution or laws of the United States. It is not intended to say that limitations imposed by the Constitution and laws of the United States and affecting and controlling the character of the judgment which the Court is authorized to render may not have that effect in any case; but it is intended simply to affirm that where it is alleged that the State Court has no jurisdiction of the subject matter of the controversy, it is not enough to establish the case as one arising under the Constitution or laws of the United States to claim the want of jurisdiction on the ground of something contained in such Constitution or laws. We understand the Supreme Court of the United States to have said that, in order to ascertain the character of the case, they must look into the pleas as well as into the plaintiff's case; but we do not understand that a plea to the jurisdiction of the Court is one of those pleas that are regarded as exhibiting the character of the case in this respect.— *Cohen* vs. *Virginia,* 6 Wheat., 379.

We must, therefore, conclude that the parties are bound to show, before they can take away our control over the case, that some provision of the Constitution or laws of the United States properly comes in question in determining the matters on which the respective claims of the parties to have been duly elected to the office in question depends.

We are satisfied that the petitioners ought to show more than this; but even this much cannot be shown, according to the view that we take of the case. There is nothing in the Constitution or laws of the United States that can be of the least service in determining which of the parties to this suit were duly elected to the

office in question. The only feature of the general proceeding to appoint electors that Congress is authorized by the Constitution to control is the day on which they are appointed.—Article II. Authority to determine the mode of appointment is conferred by the Constitution (Article II, Section 1,) on the Legislatures of the States. No limitation or restriction as to the mode of appointment or certifying the fact of appointment is imposed upon the State Legislature. In accordance with this authority, this State has undertaken to provide for the election of the electors of President and Vice President by the electors of the State, and has for that purpose put in operation election machinery that embraces the action of certain officers deriving their appointment and authority solely from the Constitution and laws of the State. By the Constitution and laws of this State the ultimate right to determine the result of an election resides in the Courts, who, by an action in the nature of a *quo warranto,* may go to the very foundations of right involved, and inquire as to the truth behind all conclusions and determinations of executive bodies and officers in all cases where the nature of the office is such that the writ of *quo warranto* is a proper remedy.

It is not alleged that Congress has ever attempted to abridge the full exercise of State authority in this respect, and, therefore, we are not called upon to examine any question as to the authority of that body under the Constitution.

It is evident, therefore, that it cannot become necessary to construe any provision of the Constitution or laws of the United States in order to ascertain who were actually and legally elected to the offices of electors of President and Vice President.

If it were otherwise, it would not be enough to show that the Constitution or laws of the United States were incidentally drawn in question.—Carter's Con. Law, 130. In our view, it would be necessary to show that that which has been done, as the ground of the claims of the respective parties to be duly elected, was done under the direct authority of the Constitution or laws of the United States. On the contrary, the direct authority that stands as the sanction and test of such proceedings is that of the Constitution and laws of the State, while the utmost that can be claimed for the Constitution and laws of the United States is that they create the office in question, and thus affect the subject matter to which the controversy relates, without entering at all into the controversy itself.

It is clear that the fact that the matter or thing that the parties are seeking to possess themselves of by means of a judgment derives its existence or value from anything contained in the Constitution or laws of the United States has no effect to confer on the case the character of one arising under the Constitution or laws of the United States. If it were otherwise every suit that seeks the recovery of money would be of that character, for the very foundation of the character and legal value of money lies in the Constitution and laws of the United States, who can alone create it as such to make it a legal object of pursuit through the judgment of a Court.

The proposition just stated is supported by *Nesmith* vs. *Calvert*, (1 Woodberry and Minot, 34.) There it was held that an action on a contract affecting the ownership of letters patent, issued for an invention, was not one arising under the Constitution or laws of the United States, notwithstanding the letters patent, the subject matter to which the controversy related, owed their existence as a subject of legal consideration to such Constitution and laws.

The fair conclusion is, that in order to constitute a case arising under the Constitution or laws of the United States, the right of action must, in its principal and essential features, rest upon such Constitution or laws, so that if they be withdrawn the case would be without support. If any question depending on the Constitution and such Constitution and laws incidentally arises, the proper mode of correcting any error committed is by review in the Supreme Court of the United States, if proper force is not allowed thereby to such Constitution or laws.

The petition should be dismissed.

*Wright*, A. J., concurred.

*Moses*, C. J., was not present at the final hearing on account of illness, but concurred in the judgment.